[No. B001001. Second Dist., Div. Five. Nov. 13, 1984.]

RONALD BLOOMBERG et al., Plaintiffs and Appellants, v.
INTERINSURANCE EXCHANGE OF THE AUTOMOBILE CLUB
OF SOUTHERN CALIFORNIA, Defendant and Respondent.

## COUNSEL

Simke, Chodos, Silberfeld & Soll, Roman M. Silberfeld and Deborah Ashby McNulty for Plaintiffs and Appellants.

Shield & Smith, Theodore P. Shield and J. Lawrence Judy for Defendant and Respondent.

## OPINION

ASHBY, Acting P. J.—This appeal is taken from a dismissal following a sustained demurrer to appellants' third amended complaint (complaint). Appellants Ronald and Barbara Bloomberg allege that respondent Interinsurance Exchange of the Automobile Club of Southern California (respondent or Auto Club),[1] by its negligence, caused the death of appellants' 16-year-old son. The bases of the demurrer were two: respondent owed no duty of care to appellants' son, and, if it did, the criminal act of an intoxicated driver was a superseding, intervening cause cutting off respondent's liability as a matter of law. Appellants urge this court to reverse on both grounds.

We accept as true the following facts as alleged in the complaint. (*Bigbee* v. *Pacific Tel. & Tel. Co.* (1983) 34 Cal.3d 49, 57, fn. 10 [192 Cal.Rptr. 857, 665 P.2d 947].) Appellants' son Seth was a passenger in a car driven by David Camblin, also 16, on the night of September 20, 1980. While traveling on the Golden State Freeway the car developed engine trouble. Camblin pulled the car onto the shoulder of the road, near a callbox. At approximately 1:30 a.m., he placed a call that was answered by the California Highway Patrol (CHP), who transferred it to the Auto Club. The boys returned to the car to await the Auto Club's emergency assistance. An Auto Club tow truck dispatched at approximately 1:30 a.m. failed to locate the stalled car. About 2:25 a.m., an intoxicated driver[2] crashed into the car, causing injuries to appellants' son that resulted in his death.

### DISCUSSION

 On appeal from a judgment of dismissal entered upon the sustaining of a demurrer without leave to amend, we must treat the demurrer as ad-

---

[1] The complaint also names as defendants the State of California and Barry Jay Hooper, but only the Auto Club is before us on this appeal.

[2] The complaint does not allege that the driver was intoxicated, but appellants had so alleged in the first and second amended complaints. We assume this fact to be true. (See *Zappas* v. *King Williams Press, Inc.* (1970) 10 Cal.App.3d 768, 775 [89 Cal.Rptr. 307].) Moreover, appellants' opening brief assumes it to be true.

mitting all material facts properly pleaded and all reasonable inferences which can be drawn therefrom. (*Bush* v. *California Conservation Corps* (1982) 136 Cal.App.3d 194, 198 [185 Cal.Rptr. 892]; *Service Employees International Union* v. *Hollywood Park, Inc.* (1983) 149 Cal.App.3d 745, 757 [197 Cal.Rptr. 316].) The allegations must be liberally construed with a view to attaining substantial justice among the parties. (*Glaire* v. *LaLanne-Paris Health Spa, Inc.* (1974) 12 Cal.3d 915, 918 [117 Cal.Rptr. 541, 528 P.2d 357].) Review is not limited to the theory of recovery relied on in the complaint. We must determine if the factual allegations are adequate to state a cause of action under any legal theory. (*Barquis* v. *Merchants Collection Assn.* (1972) 7 Cal.3d 94, 103 [101 Cal.Rptr. 745, 496 P.2d 817]; *Haller* v. *Burbank Community Hospital Foundation* (1983) 149 Cal.App.3d 650, 655 [197 Cal.Rptr. 45].)

The threshold question is whether respondent owed a duty of care to appellants' son. Determining duty is primarily a question of law. (*Weirum* v. *RKO General, Inc.* (1975) 15 Cal.3d 40, 46 [123 Cal.Rptr. 468, 539 P.2d 36].) The duty question must be decided on a case-by-case basis, but each case must be governed by the general rule that everyone is required to use ordinary care to prevent causing injury to others. (*Weirum, supra*; *Hilyar* v. *Union Ice Co.* (1955) 45 Cal.2d 30, 36 [286 P.2d 21].) A defendant who enters upon an affirmative course of conduct affecting the interests of another is regarded as assuming a duty to act, and will be liable for negligent acts or omissions (*Schwartz* v. *Helms Bakery Limited* (1967) 67 Cal.2d 232, 238 [60 Cal.Rptr. 510, 430 P.2d 68]; *Valdez* v. *Taylor Automobile Co.* (1954) 129 Cal.App.2d 810, 817 [278 P.2d 91]), because one who undertakes to do an act must do it with care. (*Schwartz* v. *Helms Bakery Limited, supra*, at p. 238; *Johnston* v. *Orlando* (1955) 131 Cal.App.2d 705, 709 [281 P.2d 357]; *Brockett* v. *Kitchen Boyd Motor Co.* (1968) 264 Cal.App.2d 69, 71 [70 Cal.Rptr. 136].) As Prosser states: "Where performance clearly has begun, there is no doubt that there is a duty of care." (Prosser, Handbook of the Law of Torts (4th ed. 1971) § 56, p. 346.)

The complaint alleges that David called the Auto Club. Seth and David then returned to their car to wait for the truck. The Auto Club sent out the tow truck but it never arrived. While waiting, appellants' son Seth became the victim of a drunk driver and was killed. Based on these facts we cannot say that respondent owed no duty of care to appellants' son. The undertaking to send the tow truck clearly did affect his interest. Had they not expected respondent to send assistance, the boys may have made other arrangements. They could have called their parents, a friend or even CHP to be driven home or at least to a safer location. (See *Fochtman* v. *Honolulu Police and Fire Depts.* (1982) 65 Hawaii 180 [649 P.2d 1114].) Appellants

allege that the Auto Club failed to locate the stalled vehicle due to its negligence. If appellants can prove respondent's negligence, respondent will be held liable for its breach of duty. It was, therefore, error to sustain respondent's demurrer on the ground that respondent owed appellants' son no duty of care.

The allegations of the complaint vis-à-vis the Auto Club sound in a negligent performance of contract theory. Respondent's demurrer did not deny the existence of a contractual duty. Respondent relied instead on the theory that the Auto Club in no way contributed to the accident that caused the death of appellants' son. During oral argument respondent contended that appellants' son was not included in a contract for emergency services made between the Auto Club and appellants. Whether appellants can go forward on a contractual theory depends upon the wording of the contract, which is not in the record before us. Nevertheless, appellants should be given the opportunity to amend to state a cause of action, either solely or alternatively, which describes a negligent undertaking. (*Minsky* v. *City of Los Angeles* (1974) 11 Cal.3d 113, 118 [113 Cal.Rptr. 102, 520 P.2d 726]; *Cordonier* v. *Central Shopping Plaza Associates* (1978) 82 Cal.App.3d 991, 998 [147 Cal.Rptr. 558].)

■ As stated above, respondent's position is that an intoxicated driver caused the death of appellants' son and that the Auto Club in no way contributed to the creation of the situation in which the accident occurred. To the extent that Seth and David relied on respondent to come to their assistance and in so relying made no other arrangements for their rescue, to that extent respondent contributed to the risk of harm. "Anyone legally responsible for the victims of the accident being in their exposed position could [be] found to have contributed in a substantial way to the causation of the accident." (*Mann* v. *State of California* (1977) 70 Cal.App.3d 773, 777 [139 Cal.Rptr. 233, 664 P.2d 137].)

■ Respondent urges that even if a duty is found to exist on the part of the Auto Club, the actions of an intoxicated driver were a superseding, intervening cause of Seth's death. ■ Generally if the risk of injury might have been reasonably foreseen, a defendant is liable. If an independent, intervening act occurs which is highly unusual or extraordinary, not reasonably likely to happen and hence not foreseeable, it is considered a superseding cause and defendant is not liable. (*Akins* v. *County of Sonoma* (1967) 67 Cal.2d 185, 199 [60 Cal.Rptr. 499, 430 P.2d 57]; *Sanders* v. *Atchison, Topeka & Santa Fe Ry. Co.* (1977) 65 Cal.App.3d 630, 650 [135 Cal.Rptr. 555].) ■ Among the possible dangers awaiting stranded motorists is injury or death caused by other drivers. In particular, intoxicated drivers are to be expected late at night. (See *Coulter* v. *Superior Court*

(1978) 21 Cal.3d 144, 154 [145 Cal.Rptr. 534, 577 P.2d 669]; *Bigbee* v. *Pacific Tel. & Tel. Co.* (1983) 34 Cal.3d 49, 58 [192 Cal.Rptr. 857, 665 P.2d 947].) It is "not uncommon" and therefore foreseeable for intoxicated or speeding drivers to lose control "and crash into poles, buildings or whatever else may be standing alongside the road they travel . . . ." (*Bigbee, supra,* at p. 58.) ■ Foreseeability of the risk is a question of fact. (*Weirum* v. *RKO General, Inc., supra,* 15 Cal.3d 40, 46.)

■ The trial court erred in holding that respondent could not, as a matter of law, be held liable for the death of appellants' son because of the unforeseeability of intoxicated freeway drivers. The foreseeability of the drunk driver losing control of his vehicle and running into the car is not a question which could be decided on a demurrer.

The judgment is reversed.

Hastings, J., and Stephens, J.,* concurred.

A petition for a rehearing was denied December 13, 1984.

---

*Retired Associate Justice of the Court of Appeal sitting under assignment by the Chairperson of the Judicial Council.